## KEENE vs. LIZARDI ET ALS.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

Breaches of contracts are either negative or positive, and the latter are not divested of their character on account of their being tortious or even criminal.

A contract of passage is broken if a cabin passenger be not allowed the cabin, or be compelled to share it with every hand on board; if he be not furnished with food, if he stipulated for it; if his situation be rendered uncomfortable, by any hand being allowed to molest him; and if he do not enjoy on board that ease and comfort for which the passage money is the consideration.

Female passengers further stipulate for a complete exemption from rude, indecent and brutal behaviour towards them.

This case was formerly brought before this court on an exception taken to the right of the plaintiff to recover against the defendants, on the facts stated in the petition, which exception was sustained by the inferior court. This court overruled the exception, reversed the decision, and remanded the cause. *See* 5 *La. Reports*, 431.

At the trial of the cause, Martinez, a witness for the plaintiff, proved the Spanish custom of a military officer demanding permission of his superior officer to marry. He verified the signature and official character of the captain general of Madrid, whose permission, granted to the plaintiff to contract marriage, was filed. He also verified the signature of the notary public, attesting the signature and official character of the curate, who certified to the extract from the register of marriages of a church in Madrid, by which it appears that the plaintiff and his wife were married according to the forms and ceremonies then and there required.

*Capt. Morrison*, of the steam tow-boat Natchez, which towed up the schooner Tepeyrac, carrying Mexican colors, and belonging to the defendants, testified that after the schooner was taken in tow, there was a great noise on board of the schooner. The plaintiff appeared, and declaring that he and his wife had been treated by the captain of the

schooner in the most brutal manner, demanded permission to come on board the tow-boat. While the plaintiff and his lady were coming on board, the latter was in tears and much agitated. The captain of the schooner then used very harsh language towards her.

*Palacios*, was a fellow passenger on the voyage from Vera Cruz to New-Orleans, in the schooner. One night he heard the mate complain that he could not sleep for the noise, and that the plaintiff's wife had taken his berth; when, in fact, no noise had been made. The seamen acted as they pleased. The language of the mate, who, in fact, commanded the schooner during the voyage, was very vulgar and indecent; at breakfast, the captain and mate once used language grossly obscene, and on the plaintiff's remonstrance, and stating that his wife was unused to this language, the mate replied, "How do I know whether she is your wife or sweet-heart?"

*Finch*, another fellow passenger, testified, that the mate was in fact the master of the schooner, and that he gave all the orders, and that his language in the presence of the plaintiff's lady, was frequently unchaste and obscene.

*Martinez*, the Mexican consul, for New-Orleans, testified, that the " *Codigo de Commercio*," published in Madrid in 1829, forms the commercial code of the Republic of Mexico, except so far as it conflicts with its independance.

*Argote*, the Spanish counsul, for New-Orleans, testified, that up to the time of the modification, by the "*Codigo de Commercio*," the Commercial Code of Spain was found in the Ordinances of Bilboa, of which the copy entitled "Ordinances, &c., printed in Paris, in 1829, is a true one.

The plaintiff excepted to the charge of the court, that the jury should find for the defendants, if they considered the law of Spain sufficiently proved, and that by that law, the owner of a vessel was not liable for the tortious acts of the captain and crew; but for the plaintiff, if the law of Mexico was not sufficiently proved, or if they thought it did not exonerate the owner from such liability.

The jury returned a verdict for the defendants, and the plaintiff, without an attempt to obtain a new trial, appealed.

Plaintiff *in propria persona*, contended that:

1. The judge *a quo*, instead of erroneously charging the jury, as he did, that it remained a doubt to be resolved or settled by them, whether a certain Spanish ordinance, promulgated in Madrid, A. D. 1829, long after the independence of Mexico or Spain, was or was not the law of Mexico, said ordinance having been improperly cited on the trial in favor of the defendants, ought to have decided that said ordinance was *not* the law of Mexico, because no act of the Mexican government, adopting that ordinance, was produced on that occasion.

2. The ordinance in question, although it had been legally admissible on the trial, ought to have been expounded by the judge to the jury, as meaning to exempt owners of vessels from criminal prosecutions only, on account of the misconduct of the masters or commanders of their vessels, whilst it left such owners liable, in damages, for the personal torts committed by those masters upon their passengers.

3. The violation of the contract of passage from Vera Cruz to New Orleans, ought to be adjudged by American jurisprudence, in contradistiction to Mexican jurisprudence, although the latter, soundly interpreted, agrees with the former, *pro hac vice*. *Partida*, 5, *title* 8, *law* 26. *Curia Philipica*, lib. 3. *cap.* 12, *nos.* 29, 40. 3 *Dallas*, 374. 6 *Peters*, 172. 2 *Kent*, 428, 429. 1 *La. Reports*, 248, 254.

4. The jurisprudence of the United States, subjects ship owners to damages for the personal torts committed by shipmasters upon their passengers. *See special judgment of the Supreme court in this case.*

*De Armas, contra.*

MARTIN, J., delivered the opinion of the court.

This case, which is that of a passenger claiming from the owners of a vessel, damages for the brutal behavior towards him and his wife, of the captain, mate and crew, was before us last summer, when we overruled the defendants excep-

tions to the plaintiff's right of action against them, and remanded the case for further proceedings. *5 La. Rep.* The defendants pleaded the general issue, and had a verdict and judgment. The plaintiff appealed.

He has put his case before us on a bill of exceptions to the charge of the judge, who instructed the jury "that if they considered that the law of Mexico was sufficiently proven, and that by that law, the owner of a vessel is not liable for the tortuous acts of the captain and crew, they ought to find a verdict for the defendants, otherwise for the plaintiff.

This charge assumes the position, that a contract for passage on board of a vessel, is to be regulated by the law of the *terminus a quo* of the voyage, and the plaintiff contends, that the contract is subject to the law of the *terminus ad quem*. The voyage was between Vera Cruz, in the republic of Mexico, and New-Orleans, and he has accordingly urged that the law of this state affords the only legitimate rule of decision.

In the case of *Malpica* vs. *Knonn et al.* 1 *La. Rep.*, which was a contract of freight, on a voyage between Vera Cruz and Havana, we held that the law of the *terminus a quo*, was to be resorted to. The decision of that case was the basis of our judgment in a subsequent one, that of *Arroyo* vs. *Currell, id.* 528, which was a contract for passage on a voyage, having the same *termini*.

In neither of these two cases was any notice taken of the law of the *terminus ad quem*. The plaintiff invoked the law of the *terminus a quo*, and the defendants that of their domicil.

The plaintiff, in this case, considering the question as to the operation of the laws of these two places, as not settled by these cases has insisted, that contracts entered into in one country, and to be performed and complied in another, are governed by the law of the latter. This question was very attentively considered by this court, in the case of *Depau* vs. *Humphreys*, 8 *Martin N. S.*, which was that of a promissory note, made in this city, but payable in New-York, and we came to the conclusion, that although the latter place

·was to regulate the payment of the note, that of this state was to be resorted to, in order to ascertain the legitimacy of the obligation of the maker.

It is likely that when the matter may be considered closely, it will appear that when a contract is to be carried into execution, as to its different parts, in several places, the law of each country is to regulate it as to such parts of the contract as are to be performed in it. But it is unnecessary to enter into the examination of this question, in the present case.

It is not denied that under the law of Mexico, or that of Louisiana, the owner is liable for the contracts of freight or passage entered by the master, and is liable for damages on a breach of either of these contracts.

*Breaches of contracts are either negative or positive, and the latter are not divested of their character, on account of their being tortious, or even criminal.*

Breaches of contracts are negative or positive, and the latter are not divested of their character, on account of their being tortious or even criminal. The pawnee or depositary of a cask of wine, may become liable in damages to the owner, by a negative breach of his contract, if by this his neglect, part or the whole of the liquor leaks out; by a positive breach if he draws it out and applies it to his own use.. In the latter case, can any surety he may have given for his contract, escape from the liability for damages on a breach of contract, on the ground of its being the result of a tortious act?

In a contract of freight, the owner and master are liable for a breach of the contract, if the master by his neglect, suffers part of the goods to be damaged, or takes out part of them from their box or package; the act (being tortious in the latter case) will not on that account absolve the owner from his liability. .

A contract of passage is broken, if a cabin passenger be not allowed the use of the cabin, or compelled to share it with every hand on board. If he be not furnished with proper food, if he stipulated for it. If his situation be rendered uncomfortable by every hand on board being allowed to molest him. Female passengers stipulate further, completely for an exemption from rude, indecent or brutal behavior towards them. The master is guilty of a negative breach of the contract of passage, if the passengers do not enjoy on board

*A contract of passage is broken, if a cabin passenger be not allowed the cabin, or be compelled to share it with every hand on board; if he be not furnished with food, if he stipulated for it; if his situation be rendered uncomfortable by any hand being allowed to molest him; and if he do not enjoy on*

EASTERN DIS.
March, 1834.

board that ease and comfort, for which the passage money is the consideration.

Female passengers further stipulate for a complete exemption from rude, indecent and brutal behavior towards them.

that ease and comfort for which the passage money is the consideration. If the master forcibly drives the passengers out of the cabin ; if he compels them to lodge with the common hands; if by his rudeness, indecency or brutality, he shock the modesty of a female passenger, so as to oblige her to quit the cabin, or as to render the passage comfortless by a continued series of vexation, misery and torment, shall he, as those who are bound for the faithful performance of his contract, escape a liability and damages on the score of his conduct being tortious. If without being guilty of any of these acts, he stimulates the mate and crew to commit them, will not the consequence be the same? If without such stimulation, he suffers them to commit those acts and neglects, to prevent them, as the result to the party injured will be the same, his right to remunerate in damages cannot be different.

The charge of the District Court appears to us to be erroneous.

It is, therefore, ordered, adjudged and decreed, that the judgment be annulled, avoided and reversed, the verdict set aside, and the case remanded, with direction to the judge not to give a charge to the jury, in contradiction with the opinion expressed in this decree. The appellees paying costs in this court.